UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2008 FEB 21 A 9: 59

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| STACIE SMITH, individually, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: |
| vs. ) | |
| ) | 2:08 cv 125-MHT |
| LIFEPOINT HOSPITALS, INC., ) | |
| D/B/A ANDALUSIA REGIONAL ) | |
| HOSPITAL; ) | DEMAND FOR JURY TRIAL |
| ) | |
| Defendant. ) | |

## COMPLAINT

**COMES NOW** the plaintiff, Stacie Smith, and files the following complaint pursuant to Rule 8 of the *Federal Rules of Civil Procedure*, and pursuant to the Court's diversity jurisdiction:

## JURISDICTION

The United States District Court has diversity jurisdiction of this matter pursuant to 28 U.S.C. Section 1332. The plaintiff, Stacie Smith, is a resident of Alabama. The defendant, LifePoint Hospitals, Inc., is a Delaware Corporation. Accordingly, there is complete diversity of citizenship, and the plaintiff asserts claims for damages in excess of $75,000.00, exclusive of interest and costs.

## PARTIES

1) Stacie Smith is over the age of 19 and a resident of Covington County, Alabama.

2) Life Point Hospitals, Inc. is a Delaware corporation doing business as Andalusia Regional Hospital in Andalusia, Alabama.

## FACTS

3) In 2006 and at all times pertinent, Dr. Gacha was a staff physician at Andalusia Regional Hospital.

4) After receiving a sting of some type on her face and experiencing severe swelling, Ms. Smith went to see Dr. Samuel Gacha. She needed to go to work where she was required to wear safety goggles. She went in to see if there was something Dr. Gacha could do to reduce the swelling and allow her to go to work.

5) After examining her, Dr. Gacha handed her a prescription to take to the outpatient area at Andalusia Regional Hospital for treatment.

6) The prescription contained the following instructions:

```
Please give
Solumedrol 125mg IV x1 dose
Pepcid 20mg IV x1 dose
Benadryl 50mg IV x1 dose
Epinephrine 0.5cc of 1:1000
Refill ___ times  repeat in 30 min
```

7) On or about April 11, 2006, after receiving the above prescription and being seen by Dr. Samuel Gacha, Ms. Smith took the prescription to the outpatient area of Andalusia Regional Hospital as instructed by Dr. Gacha, an employee of

Andalusia Regional Hospital..

8) Registered Nurse, Tammi D. Bass, an employee and agent of Andalusia Regional Hospital began treating Ms. Smith according to the prescription written by Dr. Samuel Gacha.

9) Ms. Bass, acting as an employee and agent of Andalusia Regional Hospital administered all four medications prescribed by Dr. Gacha intravenously, even though the fourth medication indicated no route of administration. The standard of care requires that if no route of administration is indicated on a medication instruction, the nurse must request the route of administration from the prescribing/ordering physician or the onsite physician in charge prior to administering the medication.

It is a breach in the standard of care to administer epinephrine intravenously unless the patient is in cardiac arrest. Otherwise, the standard requires that epinephrine be administered subcutaneously or intramuscularly. The nurse's breach in the standard of care by administering the epinephrine intravenously caused Ms. Smith to go into cardiac arrest. She came very near dying and had to be lifeflighted to a larger medical center to receive the appropriate medical care.

10) During said outpatient treatment the defendant, LIFEPOINT HOSPITALS, INC, D/B/A ANDALUSIA REGIONAL HOSPITAL was responsible for the care and treatment of STACIE SMITH.

11) Tammi Bass, R.N., as agent and employee of Andalusia Regional Hospital

fell below the standard of care by administering epinephrine without verifying a route of administration where one was not indicated. She also breached the standard of care by administering epinephrine intravenously to plaintiff Stacie Smith, when she was not in need of resuscitation from cardiac arrest.

12)   Defendant LIFEPOINT HOSPITALS, INC., D/B/A ANDALUSIA REGIONAL HOSPITAL is vicariously liable to plaintiff for negligent medical care by its agents, servants or employees who were negligent as stated above and for those agents, servants or employees who contributed to the negligence stated above and further failed to take the appropriate steps to prevent the nurse's and physician's negligent acts.

13)   The defendant violated the applicable standards of care as stated above which resulted in plaintiff's injuries and damages set forth below.

## CAUSES OF ACTION

14)   The Plaintiff fully incorporates paragraphs 1-13 above as though fully set out herein.

15)   On the date of her outpatient treatment on August 11, 2006, the defendant's actions herein resulted in the negligent provision of medical services to the plaintiff Stacie Smith.

16)   The agents and employees of Andalusia Regional Hospital, including, but not limited to Tammi Bass, RN, acting within the line and scope of their authority with that company, were negligent in the provision of care to the

plaintiff, such that their care fell below the level of reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in like cases. Andalusia Regional Hospital breached the applicable standard of care by the following actions:

    i)    In failing to properly supervise and train their nursing staff in the outpatient treatment area to verify a route of administration for a prescribed medication prior to administering the medication.

    ii)    In failing to properly educate and train their staff on the potential ramifications of administering epinephrine intravenously to a patient who is not in cardiac arrest.

    iii)    In failing to contact the prescribing/ordering physician or the in house supervising physician for information or instructions on the route of administration when it was not provided in the original order/prescription.

    iv)    The defendant hospital is vicariously liable for the negligent supervision of the staff that provided care to Ms. Smith. The staff breached the minimum standard of care required of them and was negligent in the provision of services as is more particularly set out herein.

17)    As a direct and proximate result of the negligence of the defendant, Stacie Smith was given epinephrine intravenously when she was not in cardiac arrest

and said intravenous injection caused her to go into cardiac arrest, requiring an extensive and complicated hospitalization.

18) As a proximate result of the above-described breaches in the standard of care the plaintiff, Stacie Smith, was caused to suffer potential permanent neurological damage, cardiac damage and substantial additional medical procedures, hospitalizations, and rehabilitative efforts. All of these procedures, hospital stays and rehabilitative efforts have resulted in great medical expense and missed time from work. As a proximate consequence of the breaches in the standard of care as aforesaid, plaintiff STACIE SMITH was injured and damaged as follows: She suffered cardiac arrest and required a lengthy resuscitation; she required a lengthy and difficult hospitalization in order to recover from the cardiac arrest; she now has a global cardiac dysfunction; she has had to undergo numerous medical treatments and tests; she has incurred medical, hospital, and drug expenses and will continue to experience the same in the future; she has undergone pain, suffering and mental anguish; she experienced a loss of earnings; she has been permanently injured.

**WHEREFORE, PREMISES CONSIDERED**, plaintiff Stacie Smith prays that the jury will award an amount to adequately compensate her for the injuries she has suffered and will continue to suffer. Furthermore, plaintiff prays that the jury, upon consideration of this matter, will award to her punitive damages in an amount as they may deem appropriate to reflect the enormity of the defendants' wrongs in causing the plaintiff's injuries and in order to effectively prevent other similar injuries

in the future. Plaintiff further prays for the cost of these proceedings.

**TRIAL BY JURY IS DEMANDED**

**RESPECTFULLY SUBMITTED:**

/s/ Max Cassady

Max Cassady
Cassady & Cassady, PC
14 South Section Street
Fairhope, Alabama 36401
Tel: 251-928-9558
Fax: 251-217-9033
maxcassady@bellsouth.net

/s/ Utopia Cassady

Utopia Cassady
Cassady & Cassady, PC
14 South Section Street
Fairhope, Alabama 36401
Tel: 251-928-9558
Fax: 251-217-9033
topiecassady@bellsouth.net

```
Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602003975
Cashier ID: christin
Transaction Date: 02/21/2008
Payer Name: CASSADY AND CASSADY PC
--------------------------------------
CIVIL FILING FEE
 For: CASSADY AND CASSADY PC
 Case/Party: D-ALM-2-08-CV-000125-500
 Amount:         $350.00
--------------------------------------
CHECK
 Remitter: CASSADY AND CASSADY PC
 Check/Money Order Num: 16822
 Amt Tendered: $350.00
--------------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00

DALM208CV000125-T

SMITH V LIFEPOINT HOSPITAL INC
```

in the future. Plaintiff further prays for the cost of these proceedings.

**TRIAL BY JURY IS DEMANDED**

**RESPECTFULLY SUBMITTED:**

/s/ Max Cassady
_____
Max Cassady
Cassady & Cassady, PC
14 South Section Street
Fairhope, Alabama 36401
Tel: 251-928-9558
Fax: 251-217-9033
maxcassady@bellsouth.net

/s/ Utopia Cassady
_____
Utopia Cassady
Cassady & Cassady, PC
14 South Section Street
Fairhope, Alabama 36401
Tel: 251-928-9558
Fax: 251-217-9033
topiecassady@bellsouth.net